In the Matter of **PENN CENTRAL TRANSPORTATION COMPANY**, Debtor.

Petition of Housing Authority of Camden seeking leave to condemn property in Camden, N. J.

No. 70–347.

United States District Court, E. D. Pennsylvania.

Jan. 31, 1972.

Robert W. Blanchette by Eugene Anderson, for the Trustees, Penn Central Transportation Co.

Fox, Rothschild, O'Brien & Frankel by Nochem S. Winnet, Philadelphia, Pa., for First National City Bank of New York.

Ballard, Spahr, Andrews & Ingersoll by Richardson Blair, Philadelphia, Pa., for Girard Trust Bank.

Montgomery, McCracken, Walker & Rhoads by William R. Dimeling, Philadelphia, Pa., for United New Jersey Railroad & Canal Co.

Rosen, Sherwin & Seltzer by I. Sidney Sherwin, Philadelphia, Pa., and Martin F. McKernan, Camden, N. J., for the Housing Authority of the City of Camden, N. J.

*Re: Petition of the Housing Authority of the City of Camden seeking leave to condemn property in Camden, New Jersey*

### MEMORANDUM AND ORDER NO. 570

FULLAM, District Judge.

The petitioner, the Housing Authority of the City of Camden, seeks leave of this Court to carry out condemnation proceedings in the Superior Court of New Jersey, in order to acquire ownership of a tract of 84.22 acres of land in Camden, New Jersey. Most of this tract (77.43 acres) is owned by United New Jersey Railroad and Canal Company, and has been leased to the Debtor for a term of 999 years, commencing in 1871. The fee interest is subject to a mortgage, of which Fidelity Bank is indenture trustee. Penn Central's leasehold interest is subject to the lien of the Pennsylvania Railroad General Mortgage (1915), of which Girard Trust Bank is indenture trustee.

The balance of the property (6.79 acres) is owned by West Jersey and Seashore Railroad Company (WJ & S), and is leased to and operated by the Pennsylvania-Reading Seashore Line. This property is not subject to any mortgages.

The Debtor owns approximately 54% of the capital stock of UNJ, and approximately 66% of the capital stock of the Pennsylvania-Reading Seashore Line. Of the outstanding capital stock of WJ & S, the Debtor owns approximately 57% and its wholly-owned subsidiary, the Pennsylvania Company, owns approximately 28%.

Negotiations for the acquisition of this land by the Housing Authority have been in progress for many months. For reasons which are not entirely clear on the record, these negotiations have treated the entire 84.22 acres of land as a single tract, and the petitioner apparently contemplates pursuing the same course in connection with the proposed condemnation proceedings. All of the parties have agreed that the fair value of the entire property is $2,039,600, and that the Housing Authority should, in addition to paying that sum, make certain reimbursements of relocation expenses. However, the parties are in sharp disagreement as to the proper allocation of the purchase price as among the various parties in interest.

It is agreed by all concerned that it would be in the public interest to permit the Housing Authority to acquire title to the property and enter into possession as quickly as possible; and that, under applicable provisions of New Jersey law, the most expeditious means of accomplishing this end would be for the Housing Authority to file a declaration of taking in the Superior Court of New Jersey, and to deposit with that Court the estimated purchase price. Any other method of procedure would result in undesirable delay.

As the matter has been presented to this Court, the parties have concentrated upon the issues which apparently give them the most trouble, namely, whether the allocation as between UNJ interests and Penn Central's leasehold interests (with respect to the 77.43 acres) should be determined in this Court, in the New Jersey court, or both; and whether that issue should be decided now, or later, and, if later, who should have the money in the interim. There is, however, a further issue, and that is the problem of allocation of the purchase price as be-

tween the UNJ–Penn Central tract and the WJ & S tract.

A further difficulty arises from the fact that the parties have apparently agreed on the total value of the combined tracts, so that authorization by this Court of the condemnation procedures contemplated (*i. e.*, deposit of the purchase price in the New Jersey court) might be interpreted as authorizing the Trustees to "settle" the case for a price which has not been finally determined, and without any record showing in this Court, either that the total price is adequate, or that what will probably remain after allocation to WJ & S will be adequate. It is one thing to permit a state condemnation proceeding to continue; it is quite another to approve a compromise settlement, in whole or in part, of such condemnation proceeding.

■ Presumably, this deficiency in the record was occasioned by the fact that all concerned have apparently agreed that the price is fair. All parties of record received due notice of the hearing on the present application, and no question was raised at the hearing about the adequacy of the proposed consideration. Pleadings filed on behalf of the Trustees suggest that an appraisal was in fact obtained. Accordingly, I have concluded that, while no further hearing on this issue is necessary, the record should be supplemented by a filing of the appraisal report before this Court can enter any order which would have the effect of approving the agreed-upon price.

■ It is clear that the Housing Authority should be permitted to proceed to acquire the property, conditioned, of course, upon its carrying out its various commitments to insure that there will be no interruption of rail service. It is also clear that, at least initially, the estimated purchase price should be deposited in the registry of the Superior Court of New Jersey, in order to vest title and the right of possession in the petitioner. And finally, it is clear that this Court has no present concern with the

6.79-acre WJ & S property or its proceeds. Thus, the final determination of the fair price of the 77.43-acre UNJ–Penn Central tract (*i. e.*, the allocation of the total purchase price as between the two tracts) should be resolved by the New Jersey Court. (Of course, any agreement by the Trustees to settle this dispute would be subject to the approval of this Court.)

The difficult question is whether the final determination of the allocation as between the "fee" interests of UNJ and the leasehold interests of the Debtor (and their respective mortgagees) should be made by this Court or by the New Jersey court. Counsel for the Girard Bank (and, at least by implication, counsel for the Trustees) suggest that this issue has not been adequately briefed and argued, and that it would be inappropriate to attempt a final resolution at this time. I am inclined to agree. While it is of course true that in a normal condemnation, the condemnation court would routinely determine issues of valuation as between lessor and lessee, there are many factors in the present situation which might justify a different result. The question of valuation as between lessor and lessee railroads is of vital concern to many aspects of this reorganization. Similar issues, as between the same parties, have arisen or are likely to arise in connection with several other real estate sales throughout New Jersey and Pennsylvania, and it is not unlikely that hundreds of similar questions will arise in connection with other leases. The desirability of uniformity in approach, and of avoiding expensive repetitions of litigation in several courts, would seem to be pertinent considerations. Moreover, apart from questions of relative valuation, questions may well arise with respect to disposition of the allocated proceeds, involving such matters as whether a lease has been affirmed or disaffirmed or other wise terminated, whether segregation studies reveal that the line is being operated at a profit or a loss, and related problems.

Thus, while the circumstances dictate that the condemnation should be permitted to proceed, to the extent of vesting title and right to possession in the condemnor, it is of vital importance that this Court should retain jurisdiction to determine, after full briefing and argument, whether it would be appropriate to permit the state tribunal to allocate the award as between lessor interests and lessee interests. The exigencies of this particular transaction cannot be permitted to override the obligation of this Court to insure that the procedural pattern which is to be established for handling these matters is indeed the correct one. The parties appear to concur in this view, and all have indicated their acquiescence in the entry of an order which is "without prejudice to any jurisdictional issues concerning the proceeds of the Authority's condemnation." However, counsel for UNJ, in his memorandum of law, cites the case of Ohio Oil Company v. Thompson, 120 F.2d 831 (8th Cir. 1941) for the proposition that " . . . when a trustee, having been given authority to do so, appears in a state court to litigate his right to property the state court has jurisdiction of all the incidents of the litigation, and its judgment in such action is binding upon him." *Id.* at 836. But the *Thompson* case involved a mandate from the Supreme Court, and the actual holding of the case was that the Circuit Court was without jurisdiction over the appeal. Neither that case, nor the authorities referred to in that opinion, preclude a bankruptcy court from authorizing a limited or conditional or partial right to litigate in a state court.

■ Accordingly, I have concluded that, until further order of this Court, the condemnation proceeding should be permitted to proceed only to the extent of vesting title and right to possession in the condemnor, and determining the total price to be paid by the condemnor; and that questions of allocation should not be submitted to the state court unless and until otherwise ordered by this Court.

Pending such further determination of jurisdictional issues and the appropriate forum for deciding the allocation question, the total estimated purchase price will presumably remain on deposit with the Clerk of the Superior Court of New Jersey, pursuant to N.J.S.A. 20:1-36 (1969). Of course, the parties are not precluded from agreeing, with the approval of the New Jersey court, that some other escrow arrangement should be carried out in the interim. In view of the amount involved, if it should appear that retention of the fund by the Clerk of the New Jersey court would result in substantial loss of interest, and the parties are nevertheless still unable to agree upon an escrow depository, this Court will entertain further applications on that subject.

ORDER NO. 570

And now, this 31st day of January, 1972, upon consideration of the Petition of the Housing Authority of the City of Camden, New Jersey, for relief from Orders Nos. 1 and 170, and after duly notice hearing thereon, it is ordered:

1. Notwithstanding the provisions of Order No. 1, Order No. 170 and any other Order heretofore entered in these proceedings, the Housing Authority of the City of Camden is granted permission to condemn, free and clear of lien, the property interests of the Trustees and the United New Jersey Railroad and Canal Company in real estate described in the petition of the Housing Authority, as modified in the answer of the Trustees, aggregating 77.43 acres, and upon such condemnation, it is directed to deposit in the registry of the Superior Court of New Jersey the sum of $1,848,607 as estimated just compensation for the property interests to be condemned. Pursuant to such condemnation, the Housing Authority of the City of Camden may acquire title to said property and the rights of possession therein; but, until further order of this Court, there shall be no further proceedings, and particularly no allocation of the proceeds of the condemnation as

among the various parties having interests in or claims against the said real estate.

2. The permission to condemn granted herein to the Housing Authority is conditioned upon the performance by the Housing Authority of the obligations undertaken by it in the form of agreement attached to the petition of the Housing Authority as Exhibit "B" thereof, as modified by paragraph 10 of said petition.

3. This Order is entered without prejudice to the ultimate resolution of any jurisdictional issues concerning the allocation or disposition of the proceeds of the condemnation. This Court has not made any findings with respect to such jurisdictional issues, and the right is expressly reserved to claimants to the fund, or part thereof, to contest upon at least 14 days' prior written notice the jurisdiction of this Court over such allocation and distribution.